**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**UNITED STATES OF AMERICA,**

       Plaintiff,

**v.**                                  **CRIMINAL ACTION NO. 3:14-CR-02
(JUDGE GROH)**

**JAMES WILLARD JOHNSON, a/k/a "BUM,"
EDDIE YOUNG, III, a/k/a "BOBO," and
NAVARRE SOWELL, a/k/a "VAR,"**

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS IN LIMINE REGARDING RECORDED JAIL TELEPHONE CALLS</u>

On April 23, 2014, Defendant James Willard Johnson, by his former counsel Robert C. Stone, Jr.,[1] filed the pending motion in limine requesting this Court determine the admissibility of certain jail phone calls disclosed to Defendants by the United States. [Doc. 78]. Subsequently, Defendant Eddie Young and Defendant Navarre Sowell joined the pending motion in limine. [Docs. 80, 81]. For the following reasons, this Court **DENIES** Defendants' motions in limine.

### I. Factual Background

The United States alleges the following facts underlying the charges in the Indictment. On May 2, 2013, law enforcement officials of the Eastern Panhandle Drug and

---

[1] On May 2, 2014, Mr. Stone filed a notice of potential conflict. On May 7, 2014, this Court entered an order removing Mr. Stone as counsel due to a conflict of interest. On May 8, 2014, an order was entered appointing Mr. Lary D. Garrett as Defendant Johnson's counsel.

Violent Crimes Task Force ("Task Force") met with a confidential informant ("CI") in Martinsburg, West Virginia. The CI provided information regarding John Andrew Redman, also known as "Big John" and "Biggums." The CI stated that he/she, had established Mr. Redman as a source of cocaine base and agreed to make controlled purchases from him. The CI made controlled purchases from Mr. Redman on May 2, 2013, May10, 2013, May 23, 2013, May 30, 2013, May 31, 2013, and June 7, 2013.

After the various controlled purchases by the CI from Mr. Redman, the Task Force executed a State search warrant on Mr. Redman's residence on June 10, 2013. On that date, the CI had arranged to purchase 2.5 ounces of cocaine base from Mr. Redman. While the officers were searching the residence, Mr. Redman told the officers that they would not find the 2.5 ounces of cocaine base because it had not yet been delivered tohis from his source. During the execution of the search warrant, a Task Force member approached Mr. Redman about cooperating with the investigation. Mr. Redman agreed to cooperate with the Task Force, and he revealed that his source for the crack cocaine sold to the CI was Defendant Johnson. Mr. Redman also identified Defendant Sowell as Defendant Johnson's source of cocaine base.

Later on June 10, 2013, Mr. Redman made a controlled phone call to Defendant Johnson. Shortly thereafter, Defendant Johnson arrived at Mr. Redman's residence and delivered 66.9 grams of cocaine base. After the delivery, Mr. Redman advised the Task Force that he would need to pay Defendant Johnson $3,000 the same day for the cocaine base. About three hours later, Mr. Redman was issued $3,000 in recorded United States Currency. Defendant Johnson arrived at Mr. Redman's residence to pick up the money, and Defendant Johnson's wife, Nicole Johnson, and their children waited in the vehicle.

When Defendant Johnson entered the residence, Mr. Redman gave him the $3,000.

Subsequently on June 13, 2013, Mr. Redman made a controlled phone call to Defendant Johnson to arrange a purchase of 2.5 ounces of crack cocaine. Defendant Johnson advised Mr. Redman he was still waiting on the crack cocaine to be delivered to him from his source. Thereafter, Task Force members set up surveillance on Defendant Johnson's residence. Around 7:30 p.m., a Task Force member observed Defendant Sowell pulling into Defendant Johnson's driveway. Defendant Johnson then entered Defendant Sowell's vehicle. After about five minutes, Defendant Johnson exited Defendant Sowell's vehicle and walked back into his residence.

Then, Task Force members, along with uniformed members of the Martinsburg Police Department, executed a State search warrant on Defendant Johnson's residence. The officers seized two small baggies containing marijuana, one set of scales, a box of zip lock baggies, $630 in United States Currency from Defendant Johnson's person, and Defendant Johnson's cell phone, which contained the phone numbers of Mr. Redman and Defendant Sowell. After the search, Defendant Johnson refused to cooperate. He was then arrested, charged in State court, and booked at the Eastern Regional Jail.

While at the Eastern Regional Jail, Defendant Johnson made numerous telephone calls to his wife, Nicole Johnson, and Defendant Young. The United States intends to use portions of eight of those calls at Defendant Johnson's trial. The United States also intends to use a portion of one call between Defendant Young and Defendant Johnson against Defendant Young at trial. Additionally, Defendant Sowell made several telephone calls from the Eastern Regional Jail using the pin number of Derrick Spencer. Defendant Sowell called Tiffany Lee, his girlfriend, Kirk Jones, Tavares Cook, and Brandon

Swartzwood.  The United States intends to introduce portions of six of those calls against Defendant Sowell at his trial.  Finally, the United States intends to introduce evidence of twenty-four telephone calls solely for impeachment purposes against Defendant Johnson, his wife, Nicole, his father, Ronald Bailey, and his sister, Yewatta Mitchell, at Defendant Sowell's trial if the witnesses deny that Defendant Sowell provided financial support, including paying Defendant Johnson's attorney, following Defendant Johnson's arrest on June 13, 2013.

## II.  Procedural History

On January 23, 2014, Defendants were indicted by a grand jury sitting in the Northern District of West Virginia on eight counts.  Count 1 charges that Defendants conspired to distribute cocaine base from May 2, 2013 to June 10, 2013 in the Northern District of West Virginia.  Count 2 charges that Defendant Johnson aided and abetted the distribution of cocaine base on or about May 2, 2013 near Martinsburg, West Virginia.  Count 3 charges that Defendant Johnson and Defendant Young aided and abetted the distribution of cocaine base on or about May 10, 2013.  Count 4 charges that Defendant Johnson aided and abetted the distribution of cocaine base on or about May 23, 2013 near Martinsburg, West Virginia.  Count 5 charges that Defendant Johnson aided and abetted the distribution of cocaine base on or about May 30, 2013 near Martinsburg, West Virginia.  Count 6 charges that Defendant Johnson aided and abetted the distribution of 28 grams and more of cocaine base on or about May 31, 2013, near Martinsburg, West Virginia.  Count 7 charges that Defendant Johnson aided and abetted the distribution of cocaine base on or about June 7, 2013, near Martinsburg, West Virginia.  Finally, Count 8 charges that Defendant Johnson distributed 28 grams or more of cocaine base on or about June

10, 2013, near Martinsburg, West Virginia.

On April 23, 2014, Defendant Johnson filed the pending motion in limine requesting this Court determine the admissibility of jail telephone calls disclosed by the United States. On April 29, 2014, Defendant Young joined the pending motion in limine. Also, on April 30, 2014, Defendant Sowell joined the pending motion in limine.

On April 25, 2014, the Court ordered the United States to file its response by Friday, May 2, 2014. On May 1, 2014, the United States filed its response to the motions in limine. On May 2, 2014, the Court ordered Defendants to file a reply, if any, by May 9, 2014. On May 6, 2014, Defendant Sowell filed a reply. Therefore, this issue is ripe for the Court's review.

### III. Discussion

The United States, in it response, presents portions of the recorded jail telephone calls that it intends to introduce at trial. First, the United States intends to introduce portions of eight recorded jail telephone calls made from Defendant Johnson while at the Eastern Regional Jail to his wife, Nicole Johnson, and Defendant Young. Second, the United States intends to introduce portions of six telephone calls made by Defendant Sowell while housed at the Eastern Regional Jail.

#### A. No Reasonable Expectation of Privacy

Defendant Sowell, for the first time in his reply to the United States' response, argues that the recorded jail telephone calls are inadmissible as they were obtained in violation of his Fourth Amendment right to be free from an unreasonable search. For the following reasons, the Court is not persuaded by Defendant Sowell's argument.

The United States Supreme Court has held that "prisoners have no legitimate

expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." Hudson v. Palmer, 468 U.S. 517, 530 (1984). In Hudson, an inmate argues that a "shakedown" of his prison locker and cell for contraband violated his Fourth Amendment right to protection from unreasonable searches. Id. at 519-522. The United States Supreme Court determined that the inmate did not have a justifiable or reasonable expectation of privacy in his prison cell because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." Id. at 525-26. Indeed, the Court states that "[t]he recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." Id. at 526. Accordingly, prisoners do not have a legitimate expectation of privacy in their prison cells, and the Fourth Amendment will not protect against unreasonable searches in prison cells.

In light of the Supreme Court's holding in Hudson, Defendants do not have a reasonable expectation of privacy for telephone calls made from the jail and therefore the Fourth Amendment protections against unreasonable searches does not apply. However, Title III of the Omnibus Crime Control and Safe Streets Act of 1968 also governs the use of recorded jail telephone calls. See 18 U.S.C. § 2510. Title III generally prohibits the unauthorized interception of "any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The Fourth Circuit Court of Appeals has applied Title III's protections to jailhouse telephone calls. United States v. Hammond, 286 F.3d 189, 192 (4th Cir. 2002).

In reviewing the interception of the jailhouse telephone calls at issue in this case, this Court concludes that the "law enforcement" and "consent" exceptions rendered the Eastern

Regional Jail's records of the tapes permissible.  First, the "law enforcement" exception excludes from the definition of "interception" records made by "any telephone or telegraph instrument, equipment or facility, or any component thereof . . . being used by . . . an investigative or law enforcement officer in the ordinary course of his duties."  18 U.S.C. § 2510(5)(a)(ii).  In this case, the Eastern Regional Jail was acting pursuant to its policies in the ordinary course of its duties in taping the calls.  The parties have not disputed that the calls were routed through the Eastern Regional Jail's recording system. Therefore, the "law enforcement" exception applies.

Second, 18 U.S.C. § 2511(2)(c) provides that "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communications, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."  The Fourth Circuit has interpreted the "consent" exception to apply to prison inmates that were "required to permit monitoring as a condition of using prison telephones."  Hammond, 286 F.3d at 192.  The parties have not disputed that at the beginning of each telephone call from the Eastern Regional Jail, a recorded message is played notifying callers that their conversation is subject to being monitored and recorded.  The Fourth Circuit has held that a prisoner, especially given a warning at the beginning of the call that the caller's conversation is subject to being monitored and recorded, consents to the recordings.  See United States v. Frink, 328 F. App'x 183, 189 (4th Cir. 2009).  Therefore, Defendants consented to having their calls recorded while at the Eastern Regional Jail.

Accordingly, Defendant Sowell's arguments are inapposite, and the recordings of the jail telephone calls did not violate Title III of the Omnibus Crime Control and Safe

Streets Act of 1968 or the Fourth Amendment's protections against unreasonable searches.

**B. Admissibility of Recorded Jail Telephone Calls**

Having found that recordings of the jail telephone calls were proper, the Court now analyzes the admissibility of the contents of the recordings. The Court will consider four legal principles when analyzing the admissibility of the jail telephone calls: Federal Rule of Evidence 401, Federal Rule of Evidence 403, Federal Rule of Evidence 801, and the Confrontation Clause of the Sixth Amendment of the United States Constitution.

Pursuant to Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." The Fourth Circuit has repeatedly observed that "relevance typically presents a low barrier to admissibility." United States v. Leftenant, 341 F.3d 338, 346 (4th Cir. 2003). The evidence must only be "worth consideration by the jury," or have a "plus value." United States v. Queen, 132 F.3d 991, 998 (4th Cir. 1997) (internal quotation marks omitted).

However, even relevant evidence may be excluded in some circumstances. Federal Rule of Evidence 403 provides that a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Relevant evidence may also be excluded if it is hearsay. Federal Rule of Evidence 801(c) defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth

8

of the matter asserted in the statement." However, Rule 801 classifies certain statements as nonhearsay. For example, a statement offered against an opposing party that "was made by the party in an individual or representative capacity" is defined as nonhearsay. Fed. R. Evid. 801(d)(2)(A).

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The United States Supreme Court held that "it guarantees a defendant's right to confront those 'who bear testimony' against him." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309 (2009) (quoting Crawford v. Washington, 541 U.S. 36, 51 (2004)). Therefore, a "witness's testimony against a defendant is . . . inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." Melendez-Diaz, 557 U.S. at 309.

After reviewing the relevant legal principles, the Court now turns to the admissibility of the telephone calls.

### 1. Calls from Defendant Johnson

The United States represents that it intends to introduce portions of eight recorded jail telephone calls between Defendant Johnson and Mrs. Johnson and Defendant Johnson and Defendant Young. The admissibility of each call is analyzed below.

### a. Call 9jpt76jL.v13 (June 19, 2013 at 9:12 p.m.)

The first call the United States intends to use against Defendant Johnson is a portion of a call between Defendant Johnson and Mrs. Johnson. First, the call is relevant because the conversation discusses how many trips Defendant Johnson made to Mr. Redman's residence on June 10, 2013. The statements also confirm testimony of Task Force officers

that Johnson made a trip to Mr. Redman's residence with his wife and children in the vehicle. Therefore, the conversation is relevant evidence because it tends to make a fact of consequence more probable than it would be without the evidence. Second, in reviewing the evidence, the Court does not find that the probative value of the statements is substantially outweighed by the considerations in Rule 403. Third, the statements are not hearsay. The statements made by Defendant Johnson are admissions by a party and qualify as nonhearsay under Federal Rule of Evidence 801(d)(2)(A). The statements made by Mrs. Johnson are admissible as adoptive admissions because Defendant Johnson manifested that he adopted or believed her statements to be true. <u>See</u> Fed. R. Evid. 801(d)(2)(B). For example, Mrs. Johnson asks Defendant, "When did you go over there and look at his paperwork?" Defendant responds, "When you took the kids. I was over there talking to him." In this exchange, Defendant manifested that he adopted or believed Mrs. Johnson's statements to be true that he went over "there" and looked at "his paperwork." Finally, the Confrontation Clause is not violated because Defendant's own statement does not create a confrontation issue and Mrs. Johnson's statements are not testimonial statements against Defendant Johnson that would implicate the Confrontation Clause of the Sixth Amendment.

### b.  Call 2kaf26kL.v13 (June 20, 2013 at 10:21 a.m.)

The second call the United States seeks to introduce is a portion of a recorded call between Defendant Johnson and Mrs. Johnson. First, the statements are relevant because it goes to Defendant Johnson's knowledge of the source of the drugs he delivered to Mr. Redman's residence, which were subsequently sold by Mr. Redman to the CI in this case. Second, the Court finds the evidence is probative because it goes to Defendant's

knowledge of the drug transaction on June 10, 2013, and the probative value is not substantially outweighed by the danger of unfair prejudice. Third, Defendant Johnson's statements are not excluded as inadmissible hearsay because they are statements offered against Defendant Johnson that were made by him pursuant to Rule 801(d)(2)(A). Mrs. Johnson's statements are not hearsay because the United States is not offering them for the truth of the matter asserted, rather they are being offered to provide context for the conversation. Finally, the Court does not find Defendant Johnson's right to confrontation is violated because the United States is offering Defendant's own statements against him. Additionally, Mrs. Johnson's statements are not testimonial statements against Defendant Johnson that would implicate Defendant Johnson's right to confrontation.

### c. Call 7ifw26kL.v13 (June 20, 2013 at 1:07 p.m.)

The third call is a portion of a recorded conversation between Defendant Johnson and Defendant Young. First, Defendant Johnson's statements are relevant because the phrases "gave the thing to him" and "coming back to get this" seem to refer to the cocaine base Defendant Johnson delivered to Mr. Redman on June 10, 2013 and his subsequent return to Mr. Redman's residence to pick up the $3,000 used to purchase the cocaine base. The statements make Defendant's alleged conduct in Count One and Count 8 as charged in the Indictment more probable, and the statements are of consequence in determining this action. Second, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any other consideration under Rule 403. Third, Defendant Johnson's statements are not excluded as inadmissible hearsay because they are statements offered against Defendant Johnson that were made by him pursuant to Rule 801(d)(2)(A). Defendant Young's statements are not hearsay

because they are not offered for the truth of the matter asserted, rather they are being offered to provide context for the conversation. Finally, the Court does not find Defendant Johnson's right to confrontation is violated because the United States is offering Defendant's own statements against him. Additionally, Defendant Young's statements are not "against" Defendant Johnson, and they do not trigger the Confrontation Clause.

### d. Call 6kn4p6IL.v13 (June 21, 2013 at 5:07 p.m.)

The fourth call is a portion of a recorded conversation between Defendant Johnson and Mrs. Johnson. In the conversation, Mrs. Johnson essentially asks whether "Charlzie" was supposed to get $300.00 from "Biggums." The United States represents that Charlzie is Defendant Johnson's brother, Charles Johnson, and that Biggums is an alias for Mr. Redman. Defendant Johnson also states "I was trying to get Charlzie to ask [Biggums], to say to him, "Well, hey, did you get my brother more than once?" That's what I was trying to get through him." First, Defendant Johnson's statements are relevant because they tend to establish two facts: (1) that Mr. Redman owed Defendant Johnson $300.00, indicating a drug debt, and (2) that Defendant Johnson knew Mr. Redman engaged in a controlled transaction to "get him" at least once and was concerned whether the other drug transactions he conducted with Mr. Redman were also controlled transactions. The statements make Defendant's alleged conduct in Count One and Count 8 as charged in the Indictment more probable, and the statements are of consequence in determining this action. The statements also make an ongoing drug relationship between Defendant Johnson and Mr. Redman more probable than it would be without the evidence. Second, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any other concern under Rule 403. Third, Defendant

Johnson's statements are not excluded as inadmissible hearsay because they are statements offered against Defendant Johnson that were made by him pursuant to Rule 801(d)(2)(A). Mrs. Johnson's statements are not hearsay because they are not offered for the truth of the matter asserted, rather they are being offered to provide context for the conversation. Additionally, most of Mrs. Johnson's comments are questions rather than a statement, such as "You go through to him?" The remaining statements made by Mrs. Johnson are admissible as adoptive admissions because Defendant Johnson manifested that he adopted or believed her statements to be true. Fed. R. Evid. 801(d)(2)(B). Finally, the Court does not find Defendant Johnson's right to confrontation is violated because the United States is offering Defendant's own statements against him. Additionally, Mrs. Johnson's statements are not testimonial statements against Defendant Johnson that would trigger the Confrontation Clause.

### e. Call aa4px6IL.v13 (June 21, 2013 at 5:32 p.m.)

The fifth call is a portion of a recorded conversation between Defendant Johnson and Mrs. Johnson. In the conversation, Defendant Johnson admits that he told Charlzie, his brother, to recover "the money" from presumably Mr. Redman. The statement tends to show that Mr. Redman owed Defendant Johnson $300.00, indicating a drug debt. Defendant Johnson also comments that Charles, his brother, is upset because "his best friend set his brother up." This is relevant because it confirms that Mr. Redman successfully completed the controlled transaction with Defendant Johnson on June 10, 2013. The statements make Defendant's alleged conduct in Count One and Count 8 as charged in the Indictment more probable, and the statements are of consequence in determining this action. The statements also make an ongoing drug relationship between

13

Defendant Johnson and Mr. Redman more probable than it would be without the evidence. Second, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any other concern under Rule 403. Third, Defendant Johnson's statements are not excluded as inadmissible hearsay, pursuant to Rule 801(d)(2)(A), because they are statements offered against him that were made by him. Mrs. Johnson's statements are not hearsay because they are not offered for the truth of the matter asserted, rather they are being offered to provide context for the conversation. For example, Mrs. Johnson comments that Defendant Johnson's actions were "not smart." The United States is not offering her statement for the truth of the matter asserted–the fact that Defendant Johnson's actions were, in fact, "not smart." The remaining statements made by Mrs. Johnson are admissible as adoptive admissions because Defendant Johnson manifested that he adopted or believed her statements to be true. Fed. R. Evid. 801(d)(2)(B). Finally, the Court does not find Defendant Johnson's right to confrontation is violated because the United States is offering Defendant's own statements against him. Additionally, Mrs. Johnson's statements are not testimonial statements against Defendant Johnson that would trigger the Confrontation Clause.

### f. Call 3mph16IL.v13 (June 21, 2013 at 5:57 p.m.)

The sixth call is a portion of a recorded conversation between Defendant Johnson and Mrs. Johnson. In the conversation, Defendant Johnson states that he was trying to get his brother to ask Mr. Redman whether he "g[o]t me more than . . . once." This is relevant because it confirms that Mr. Redman successfully completed the controlled transaction with Defendant Johnson on June 10, 2013. The statements make Defendant Johnson's alleged conduct in Count One and Count 8 as charged in the Indictment more probable, and the

14

statements are of consequence in determining this action.   The statements also make an ongoing drug relationship between Defendant Johnson and Mr. Redman more probable than it would be without the evidence.  Second, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any other concern under Rule 403.  Indeed, although Defendant Johnson uses some profanity in his statements that may be prejudicial, it is not *unfairly* prejudicial nor does the danger substantially outweigh the probative value of the statements.  Third, Defendant Johnson's statements are not excluded as inadmissible hearsay, pursuant to Rule 801(d)(2)(A), because they are statements offered against him that were made by him.  Mrs. Johnson's statements are not hearsay because they are not offered for the truth of the matter asserted, rather they are being offered to provide context for the conversation.  Finally, the Court does not find Defendant Johnson's right to confrontation is violated because the United States is offering Defendant's own statements against him.   Additionally, Mrs. Johnson's statements are not testimonial statements against Defendant Johnson that would trigger the Confrontation Clause.

### g.  Call 8m78dGIL.v13 (June 21, 2013 at 6:19 p.m.)

The seventh call is a portion of a recorded conversation between Defendant Johnson and his wife.  In the conversation, Defendant Johnson's single statement tends to elaborate on his previous statements that he asked his brother to ask  Mr. Redman whether he "got him more than once."   This is relevant because it confirms that Mr. Redman successfully completed the controlled transaction with Defendant Johnson on June 10, 2013.  The statements make Defendant's alleged conduct in Count One and Count 8 as charged in the  Indictment more probable, and the statements are of

consequence in determining this action. The statements also make an ongoing drug relationship between Defendant Johnson and Mr. Redman more probable than it would be without the evidence. Second, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any other consideration under Rule 403. Third, Defendant Johnson's statements are not excluded as inadmissible hearsay, pursuant to Rule 801(d)(2)(A), because they are statements offered against him that were made by him. Finally, the Court does not find Defendant Johnson's right to confrontation is violated because the United States is offering Defendant's own statements against him.

### h. Call ab1md6ml (June 22, 2013 at 9:14 p.m.)

The eighth call is a portion of a recorded conversation between Defendant Johnson and Defendant Young. In the conversation, Defendant Johnson asks Defendant Young whether he has seen Charlzie because Defendant Johnson was "trying to do was just check and see, to ask that nigga if he got me more than once." This is relevant because it confirms that Mr. Redman successfully completed the controlled transaction with Defendant Johnson on June 10, 2013. The statements make Defendant's alleged conduct in Count One and Count 8 as charged in the Indictment more probable, and the statements are of consequence in determining this action. The statements also make an ongoing drug relationship between Defendant Johnson and Mr. Redman more probable than it would be without the evidence. Defendant Johnson's statement about Mr. Redman being "hemmed up" are relevant because it relates to Mr. Redman cooperating with the Task Force. Also, Defendant Johnson's statement about "two and a half" is relevant because a reasonable juror could infer that he was speaking about the 2.5 ounces the CI ordered from Mr.

Redman on June 10, 2013. Second, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any other concern under Rule 403. Third, Defendant Johnson's statements are not excluded as inadmissible hearsay, pursuant to Rule 801(d)(2)(A), because they are statements offered against him that were made by him. Additionally, Defendant Young's statements are not hearsay because they are not being offered to prove the truth of the matter asserted. Finally, the Court does not find Defendant Johnson's right to confrontation is violated because the United States is offering Defendant's own statements against him. Additionally, the United States intends to edit out the statements made by Defendant Young which would tend to implicate Defendant Johnson's right to confrontation and trigger Defendant Johnson's right to confront him.

## 2. Calls Between Defendant Johnson and Defendant Young

The United States intends to use one recorded telephone conversation against Defendant Young, which is a recorded call between Defendant Johnson and Defendant Young on July 19, 2013 at 10:10 p.m. In that conversation, Defendant Young states, among other things, that "[h]e's been telling everybody he got me." Defendant Young's statements tends to show consciousness of his guilt because he discusses whether law enforcement "got him." Second, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any other concern under Rule 403. Third, Defendant Young's statements are not excluded as hearsay, pursuant to Rule 801(d)(2)(A), because they are statements offered against him that were made by him. Mr. Johnson's statements are not inadmissible hearsay because they are not offered for the truth of the matter asserted, rather they are being offered to provide context for the

17

conversation. Finally, the Court does not find Defendant Young's right to confrontation is violated because the United States is offering Defendant's own statements against him, and Defendant Johnson's statements which may implicate the Confrontation Clause will not be used against Defendant Young.

### 3. Calls from Defendant Sowell

The United States represents that it intends to introduce portions of six recorded jail telephone call conversations between Defendant Sowell and Tiffany Lee, his girlfriend, Kirk Jones, Tavares Cook, and Brandon Swartzwood. The admissibility of each call is analyzed below.

### a. Call 9f9b51uL.v14 (January 30, 2014 at 8:10 p.m.)

The first call contains statements from Defendant Sowell regarding whether Mr. Redman ("Big John") or Defendant Johnson ("Bum") had told the police "who he was getting that shit from" and whether the police had taken Defendant Sowell's picture that day. First, the statements are relevant because it reflects Defendant Sowell's knowledge of the case against him–that either Mr. Redman or Defendant Johnson may have revealed him as their source to law enforcement. Additionally, Defendant Sowell's statement regarding whether his picture was taken relates to his meeting with Defendant Johnson on June 13, 2013. The statements make Defendant's alleged conduct in the Indictment more probable than it would be without the evidence, and the statements are of consequence in determining this action. Second, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any other considerations under Rule 403. Third, Defendant Sowell's statements are not excluded as inadmissible hearsay, pursuant to Rule 801(d)(2)(A), because they are statements offered against him

that were made by him. Finally, the Court does not find Defendant Johnson's right to confrontation is violated because the United States is offering Defendant's own statements against him.

### b. Call 518s61vL.v14 (January 31, 2014 at 8:44 a.m.)

The second call is a portion of a recorded conversation between Defendant Sowell and Tiffany Lee. First, the statements are relevant because Defendant Sowell's statements tend to show his understanding of the case against him, specifically with regard to whether Mr. Redman and Defendant Johnson are cooperating with law enforcement officials. For example, Defendant Sowell states that "they . . started pressing Bum. Bum didn't say nothing." This statement tends to show that Defendant Sowell believes Defendant Johnson is not cooperating against him. Additionally, Defendant Sowell states "[w]hen that happened, they seen me they went over to Big John and probably was like why do you think he was over there." This statement tends to relate to law enforcement officials seeing Defendant Sowell with Defendant Johnson on June 13, 2013–the date of the search of Defendant Johnson's residence. Second, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any other consideration under Rule 403. Third, Defendant Sowell's statements are not excluded as inadmissible hearsay, pursuant to Rule 801(d)(2)(A), because they are statements offered against him that were made by him. Tiffany Lee's single statement, "Right," is not being introduced for the truth of the matter asserted. Therefore, it is not hearsay. Finally, the Court does not find Defendant Sowell's right to confrontation is violated because the United States is offering Defendant's own statements against him. Additionally, Tiffany Lee's statement, "right," is not a testimonial statement against Defendant Sowell that implicates

his right to confrontation.

### c. Call 9ffkq1vL.v14 (January 31, 2014 at 9:26 a.m.)

The third conversation is a portion of a recorded telephone call between Defendant Sowell and Kirk Jones. In this call, Defendant Sowell states "it's going to come down probably to Bum" and "I don't know about Bum yet, but I'm going to say Biggums is in the mix." First, Defendant Sowell's statements are relevant because they reflect his concern regarding whether Defendant Johnson ("Bum") will cooperate against him. Second, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any other consideration under Rule 403. Third, Defendant Sowell's statements are not excluded as inadmissible hearsay, pursuant to Rule 801(d)(2)(A), because they are statements being offered against Defendant Sowell and were made by him. As to Kirk Jones' comments, almost all of them are questions. Therefore, they are not statements subject to Rule 801. Additionally, Kirk Jones makes a statement of "Yeah." This statement is not offered for the truth of the matter asserted. Therefore, it is not hearsay. Finally, the Court does not find Defendant Sowell's right to confrontation is violated because the United States is offering Defendant's own statements against him. Also, Kirk Jones' statements do not implicate Defendant Sowell's right to confrontation because his comments are mainly questions and they are not testimonial statements being offered against Defendant Sowell.

### d. Call basep1vL.v14 (January 31, 2014 at 4:04 p.m.)

The fourth conversation is a portion of a recorded telephone call between Defendant Sowell and Tavares Cook. In this call, Defendant Sowell states that "[a]t least we know now that Bum ain't go to the Grand Jury." He also makes statements regarding Defendant

Johnson's statements to law enforcement that could "go against him" if he "flip[ped]." First, Defendant Sowell's statements are relevant because they reflect his relief that Defendant Johnson did not cooperate against him by testifying before the grand jury. However, his statements continue to show a concern that Defendant Johnson could cooperate against him because Defendant Sowell discusses statements that could be used to impeach Defendant Johnson if he cooperates with law enforcement. Second, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any other consideration under Rule 403. Third, Defendant Sowell's statements are not excluded as inadmissible hearsay, pursuant to Rule 801(d)(2)(A), because they are statements offered against him that were made by him. Also, Tavares Cook's single comment is whether Defendant Johnson is being placed in Defendant Sowell's pod. This is a question and not a statement subject to Rule 801. Finally, the Court does not find Defendant Sowell's right to confrontation is violated because the United States is offering Defendant's own statements against him. Also, Tavares Cook's statement does not implicate Defendant Sowell's right to confrontation because his comment was a single question and it is not offered to implicate Defendant Sowell.

### e. Call a319n1vL.v14 (January 31, 2014 at 7:31 p.m.)

The fifth conversation is a portion of a recorded telephone call between Defendant Sowell and Tiffany Lee. In this call, Tiffany Lee asks Defendant Sowell whether he spoke with Bum. Defendant Sowell responds that "[a]ll is good," "nobody is doing that" (in referencing to "flipping"), and "[w]e're all on the same page." First, Defendant Sowell's statements are relevant because they tend to show that he spoke with Defendant Johnson regarding whether he is going to cooperate against him, and Defendant Johnson indicated

that he is not going to cooperate against him.  Second, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any other considerations under Rule 403.  Third, Defendant Sowell's statements are not excluded as inadmissible hearsay, pursuant to Rule 801(d)(2)(A), because they are statements being offered against him that were made by him.  Also, Tiffany Lee's single comment is whether Defendant Sowell spoke with Bum.  This is a question and not a statement subject to Rule 801.  Finally, the Court does not find Defendant Sowell's right to confrontation is violated because the United States is offering Defendant's own statements against him.  Also, Tiffany Lee's statement does not implicate Defendant Sowell's right to confrontation because her comment was a single question and not a testimonial statement against Defendant Sowell.

### f. Call 3klzp21L.v14 (February 1, 2014 at 10:37 a.m.)

The sixth conversation is a portion of a recorded telephone call wherein Defendant Sowell states that "the whole case is . . . they just trying to get homeboy to flip or something. . . . And he ain't going out like that."  First, Defendant Sowell's statements are relevant because they tend to show Defendant Sowell's recurring concern of whether Defendant Johnson is going to cooperate against him.  The statements also tend to show Defendant Sowell's consciousness of his guilt and that Defendant Johnson contains information that could in fact be used against him in the criminal case.   Second, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any other concern under Rule 403.  Third, Defendant Sowell's statements are not excluded as inadmissible hearsay, pursuant to Rule 801(d)(2)(A), because they are statements offered against him that were made by him.  Finally, the Court

does not find that Defendant Sowell's right to confrontation is implicated by the statements because the United States is offering Defendant's own statements against him.

### 4. Defendant Johnson's Calls Regarding Defendant Sowell

The United States also seeks to use the following recorded telephone conversations of Defendant Johnson from the Eastern Regional Jail for impeachment purposes only.

### a. Calls Discussing Defendant Sowell's Financial Support to Defendant Johnson

The United States represents that there are twenty-two recorded jail telephone calls of Defendant Johnson to Mrs. Johnson, Ronald Bailey, his father, and Yewatta Mitchell, his sister, wherein they discuss that Defendant Sowell is paying for Defendant Johnson's attorney and providing other financial support following his arrest on June 13, 2013. The calls span a time period of June 19, 2013 to November 7, 2013. The United States intends to call Defendant Johnson, Nicole Johnson, Ronald Bailey, and Yewatta Mitchell at Defendant Sowell's trial. The United States represents that the calls will be used solely to impeach their testimony if they deny that Defendant Sowell paid for Defendant Johnson's attorney.

First, the calls are relevant because they show that Defendant Sowell paid for Defendant Johnson's attorney. This fact tends to show that Defendant Sowell was conscious of his guilt. Second, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any other consideration under Rule 403. Third, the calls would not constitute hearsay as they would be introduced for impeachment purposes and not for the truth of the matter asserted. See Fed. R. Evid. 613 (permitting extrinsic evidence of witness's prior inconsistent statement); United States

v. Midgett, 488 F.3d 288, 299 (4th Cir. 2007) (upholding a district court's decision to admit letters authored by a witness as extrinsic evidence of prior inconsistent statements but holding the letters were inadmissible to prove the truth of the matter asserted). Finally, Defendant Sowell's right to confrontation is not implicated because the trials of Defendant Johnson and Defendant Sowell are severed, and Defendant Sowell may cross examine Defendant Johnson as to the statements. Additionally, the other witnesses would be available for cross examination.

> ### b. Calls Discussing End of Defendant Sowell's Financial Support to Defendant Johnson

There are two recorded jail telephone calls of Defendant Johnson discussing the end of Defendant Sowell's financial support. The calls occurred on November 7, 2013 and on November 8, 2013. In those calls, Defendant Johnson makes statements reflecting his frustration with Defendant Sowell when he discontinued paying for Defendant Johnson's attorney. The United States intends to impeach Defendant Johnson with these two calls if he denies being frustrated that Defendant Sowell discontinued paying for his attorney.

First, the calls are relevant because they tend to show that Defendant Sowell paid for Defendant Johnson's attorney in return for Defendant Johnson refusing to cooperate against Defendant Sowell. Second, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any other considerations under Rule 403. Third, the calls would not constitute hearsay as they would be introduced for impeachment purposes and not for the truth of the matter asserted. See Fed. R. Evid. 613; Midgett, 488 F.3d at 299. Finally, Defendant Sowell's right to confrontation is not implicated because the trials of Defendant Johnson and Defendant Sowell are severed, and

Defendant Sowell may cross examine Defendant Johnson as to the statements.

### IV.  Conclusion

Accordingly, after careful review of the motions, the Defendants' motions in limine are **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** August 13, 2014

GINA M. GROH
UNITED STATES DISTRICT JUDGE